JAMES A. PERRY *vs.* WEBSTER COMPANY.

Bristol.    October 27, 1913. — November 25, 1913.

Present: RUGG, C. J., MORTON, BRALEY, SHELDON, & DE COURCY, JJ.

*Negligence,* Employer's liability.

At the trial of an action at common law by a night watchman and fireman in a factory against his employer to recover for injuries received by an escape of steam from a valve of a boiler, there was evidence that there were two boilers side by side, only one of which was in use at a time, that they connected through valves with the same exhaust pipe; that on the day before the accident the defendant's engineer, to repair the valve on the boiler not in use, had removed a portion of it and had left off the bonnet, leaving the valve open, without telling the plaintiff; that it was the plaintiff's duty each night to exhaust the steam from the boiler which had been used during the day, and that, while he was performing that duty on the day in question, the steam escaped from the valve of the other boiler which the engineer had left open, injuring the plaintiff. *Held,* that there was evidence for the jury of due care of the plaintiff and of negligence of the defendant.

TORT at common law for personal injuries received by the plaintiff while in the employ of the defendant in its factory as a fireman and night watchman. Writ dated November 28, 1910.

In the Superior Court the case was tried before *Bell,* J. The following facts appeared in evidence:

There were two boilers in the defendant's fire room, only one of which was used at a time. They were side by side and were drawn off through valves which connected with the same exhaust pipe. It was part of the plaintiff's duty every night to draw off the boiler that was in use, called the "live boiler." The other boiler was called the "dead boiler." On the night of the accident the plaintiff was proceeding to draw off the live boiler, and had opened the valve for this purpose, when almost immediately hot

water and steam came out of the valve in the dead boiler, and he was injured.

The engineer for the defendant in charge of its fire and engine rooms testified that on the afternoon before the accident he removed a portion of the valve of the dead boiler consisting of the disc and disc seat; that in order to do that it was necessary for him to remove the bonnet or outside part of the valve; that he placed the bonnet right beside the bottom part of the valve; that he removed the disc and the disc seat to have them ground down, as he had discovered that water was leaking through them; that he did not tell the plaintiff that he had removed the disc and disc seat; and that after taking out the disc and disc seat he could have put the top or bonnet of the valve back on again, which would have covered up the opening in the valve, so that no steam could have escaped.

At the close of the evidence the defendant asked for a ruling that on all the evidence the plaintiff could not recover. The ruling was refused, there was a verdict for the plaintiff for $1,110; and the defendant alleged exceptions.

The case was submitted on briefs.

*H. R. Bygrave & I. Brayton,* for the defendant.

*J. J. Feely & R. Clapp,* for the plaintiff.

BRALEY, J. The repair of the boilers necessary to keep them in running order apparently had been entrusted to the engineer, who is not shown to have been incompetent. If upon removal of the disc and disc seat he had replaced the top or bonnet of the valve, or notified the plaintiff who was the fireman of the repairs, the accident would have been averted. It is the defendant's contention, that the engineer's negligence was the proximate cause, and, being a fellow servant at common law, he cannot recover. *McDermott* v. *Boston,* 133 Mass. 349.

The defendant corporation engaged to provide proper machinery, to keep it in suitable repair, as well as to employ and retain competent servants. But if it could carry on business only through the agency of natural persons acting under delegated powers, the duty to exercise reasonable supervision over the condition in which its permanent ways, works and machinery were kept still devolved upon the employer. *McGee* v. *Boston Cordage Co.* 139 Mass. 445, 448. "The general question," said Mr. Justice

Field in *Rice* v. *King Philip Mills,* 144 Mass. 229, 236, "is what under the circumstances the master ought reasonably to have known and done, and, in determining this, the nature of the defect, the length of time it has existed, and the means taken to remedy it, are important facts." If the jury found, that the defendant ought to have known of the defective and dangerous condition of the boiler, it should have made the premises reasonably safe, or warned the plaintiff of the danger. *Ruddy* v. *George F. Blake Manuf. Co.* 205 Mass. 172, 178, 179, and cases cited.

The instructions although they might have been more full were unexceptionable.

Nor could it have been ruled, that the plaintiff was careless. The boilers, each of which was connected with the same exhaust pipe, were used singly, but not in combination. At the close of the day's work the plaintiff drew off the steam from the boiler in use, and what inferences should be drawn from his failure to notice the condition of the idle boiler upon which no work was then required of him, or to assume in the absence of any information to put him upon inquiry, that it was undergoing repairs, were for the jury. *Ruddy* v. *George F. Blake Manuf. Co.* 205 Mass. 172, 181.

*Exceptions overruled.*